UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

SECURITIES AND EXCHANGE COMMISSION,

                  Plaintiff,

                  v.

SAPERE WEALTH MANAGEMENT, LLC and
SCOTT TREASE,

                  Defendants.

C.A. No. __-____

**CONSENT OF DEFENDANT SCOTT TREASE**

1. Defendant Scott Trease ("Defendant Trease," and collectively with Defendant Sapere Wealth Management, LLC, "Defendants") waives service of a summons and the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant Trease and over the subject matter of this action.

2. Without admitting or denying the allegations of the complaint (except as provided herein in paragraph 13 and except as to personal and subject matter jurisdiction, which Defendant Trease admits), Defendant Trease hereby consents to the entry of the final Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

    (a) permanently restrains and enjoins Defendant Trease from, directly or indirectly, violating Section 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-6(2)];

    (b) orders Defendant Trease to comply with the conduct-based injunction

1

attached as Appendix A; and

(c) orders Defendant Trease to pay a civil penalty in the amount of $100,000 under Section 209(e) of the Advisers Act [15 U.S.C. 80b-9(e)].

3. Defendant Trease acknowledges that the civil penalty paid pursuant to the Final Judgment may be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002. Regardless of whether any such Fair Fund distribution is made, the civil penalty shall be treated as a penalty paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Defendant Trease agrees that he shall not, after offset or reduction of any award of compensatory damages in any Related Investor Action based on Defendant Trease's payment of disgorgement in this action, argue that he is entitled to, nor shall he further benefit by, offset or reduction of such compensatory damages award by the amount of any part of Defendant Trease's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Defendant Trease agrees that he shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this action. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Defendant Trease by or on behalf of one or more investors based on substantially the same facts as alleged in the Complaint in this action.

4. Defendant Trease agrees that he shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made

2

pursuant to any insurance policy, with regard to any civil penalty amounts that Defendant Trease pays pursuant to the Final Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors. Defendant Trease further agrees that he shall not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, or local tax for any penalty amounts that Defendant Trease pays pursuant to the Final Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors.

5. Defendant Trease undertakes to, within 10 business days of the entry of the Final Judgment, distribute copies of the complaint and Final Judgment in this matter to all of his current (as of the date of the Final Judgment) advisory "clients," (as that term is used in 15 U.S.C. § 80b-6) (collectively, "Clients" and each a "Client")) along with a cover letter not unacceptable to Commission Enforcement staff, via mail, commercial courier, or e-mail; and certify, in writing, compliance with the undertakings set forth above. The certification shall identify the undertakings, provide written evidence of compliance in the form of a narrative, and be supported by exhibits sufficient to demonstrate compliance. The Commission staff may make reasonable requests for further evidence of compliance, and Defendant Trease agrees to provide such evidence. Defendant Trease shall submit the certification and supporting material to the Associate Regional Director of Enforcement in the Commission's Atlanta Regional Office, with a copy to the Office of Chief Counsel of the Enforcement Division, no later than 20 business days from the date of the completion of the undertakings.

6. Defendant Trease waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

7. Defendant Trease waives the right, if any, to a jury trial and to appeal from the

entry of the Final Judgment.

8. Defendant Trease enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant Trease to enter into this Consent.

9. Defendant Trease agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

10. Defendant Trease will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

11. Defendant Trease waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant Trease of its terms and conditions. Defendant Trease further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant Trease has received and read a copy of the Final Judgment.

12. Consistent with 17 C.F.R. 202.5(f), this Consent resolves only the claims asserted against Defendant Trease in this civil proceeding. Defendant Trease acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant Trease waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. Defendant

4

Trease further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant Trease understands that he shall not be permitted to contest the factual allegations of the complaint in this action.

13. Defendant Trease understands and agrees to comply with the terms of 17 C.F.R. § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings," and "a refusal to admit the allegations is equivalent to a denial, unless the defendant or respondent states that he neither admits nor denies the allegations." As part of Defendant Trease's agreement to comply with the terms of Section 202.5(e), Defendant Trease: (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; (ii) will not make or permit to be made any public statement to the effect that Defendant Trease does not admit the allegations of the complaint, or that this Consent contains no admission of the allegations, without also stating that Defendant Trease does not deny the allegations; (iii) upon the filing of this Consent, Defendant Trease hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint; and (iv) stipulates solely for purposes of exceptions to discharge set

forth in Section 523 of the Bankruptcy Code, 11 U.S.C. §523, that the allegations in the complaint are true, and further, that any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant Trease under the Final Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant Trease of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. §523(a)(19). If Defendant Trease breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant Trease's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

14. Defendant Trease hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant Trease to defend against this action. For these purposes, Defendant Trease agrees that Defendant Trease is not the prevailing party in this action since the parties have reached a good faith settlement.

22. Defendant Trease agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

6

23. Defendant Trease agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Final Judgment.

Dated: March 1, 2023

*Scott Trease*

On March 1, 2023, Scott Trease, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.

*Rebekah D Murphy*
Notary Public
Commission expires: 9/26/24

[Notary Seal: REBEKAH D MURPHY, NOTARY PUBLIC, CARTERET CO., NC]

Approved as to form:

*Brian L. Whisler*

Brian L. Whisler, Esq.
Peter K.M. Chan, Esq.
Baker & McKenzie LLP
815 Connecticut Ave NW
Washington, DC 20006 USA
202-452-7019
312-861-2875
Attorney for Defendant Trease

7

# Appendix A

**Conduct Based Injunction**

a. For a period of 5 years from the date of this order, Defendants shall not, directly or indirectly, including but not limited to, through any entity owned or controlled by them, make any recommendation to, provide advice to, or exercise discretionary trading authority on behalf of, ("Recommend," "Make a Recommendation," or "Recommendation") any "client" of Defendants (as that term is used in 15 U.S.C. § 80b-6) (collectively, "Clients" and each a "Client") regarding any securities, investment, or debt transaction (collectively "Transaction"), except that this injunction shall not prevent Defendants from:

   i. Recommending a Transaction to a Client that consists of buying or selling publicly traded securities (for purposes of this order, "publicly traded security" means any security (including an option on individual securities, and an option on a group or index of such securities) listed, or admitted to unlisted trading privileges, on a national securities exchange) or listed futures (for purposes of this order, "listed futures" means any futures transaction that is conducted on or subject to the rules of a contract market or derivatives transaction execution facility appropriately designated by the Commodity Futures Trading Commission and that is executed or consummated by or through such contract market);

   ii. Recommending a Transaction to a Client that consists of buying or selling securities or other interests of an investment company registered with the Commission or of a pooled investment vehicle that invests only in publicly traded securities; or

   iii. Recommending a Transaction to a Client if:

   1. Prior to making such Recommendation, Defendants engage a due diligence consultant, which is not an associated person of Defendant Sapere or its affiliates, and in which no such associated person has any ownership, employment, or beneficial interest, ("Due Diligence Consultant") to perform reasonable due diligence on the entities and individuals that the Due Diligence Consultant deems appropriate for due diligence review of the Transaction, such as the underlying issuer, fund, pooled investment vehicle, or other person or entity with which the Client would be transacting, and the Due Diligence Consultant completes such reasonable due diligence; or

   2. There was previously performed reasonable due diligence by a Due Diligence Consultant on the entities and individuals that the Due Diligence Consultant deemed appropriate for due diligence review of the Transaction, such as the underlying issuer, fund, pooled investment

i

vehicle, or other person or entity with which the Client would be transacting ("Prior Due Diligence").

b. When making a Recommendation to a Client on a Transaction, Defendants shall inform the Client, if applicable, that a Due Diligence Consultant has, at the completion of the reasonable due diligence, rejected or recommended against the Recommendation (or rendered such a rejection or recommendation in Prior Due Diligence).

c. Within 30 days after the five-year anniversary of this order, Defendants shall certify in writing compliance with the injunction described in paragraphs a and b and their subparts. The certification shall identify the injunction and provide written evidence of compliance in the form of a narrative. The Commission staff may make reasonable requests for further evidence of compliance, and Defendants agree to provide such evidence. The certification shall be submitted to the Associate Regional Director for Enforcement of the Commission's Atlanta Regional Office, with a copy to the Office of Chief Counsel of the Enforcement Division. The narrative shall include the following information for the five-year period of the injunction:

   i. The name and contact information for all Due Diligence Consultants engaged to review Transactions; and

   ii. A description of all instances in which Defendants provided a Recommendation to a Client after a Due Diligence Consultant, at the completion of the reasonable due diligence, rejected or recommended against the Recommendation of a Transaction to a Client (or rendered such a rejection or recommendation in Prior Due Diligence).

d. This order does not prohibit Defendant Trease from performing any Transaction in his own personal account.